UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DASHAUN JAMISON,  :
    Plaintiff  :
  :
vs.  :  CIVIL NO. 1:12-CV-1500
  :
DAVID A. VARANO, *et. al.*,  :
    Defendants  :

*M E M O R A N D U M*

*I.*    *Introduction*

We are considering a motion for summary judgment. (Doc. 77). This matter relates to a pro se complaint filed by Plaintiff Dashaun Jamison, an inmate within the Pennsylvania correctional system. (Doc. 1). Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that fifty-four officials violated his constitutional rights while he was housed at the State Correctional Institute in Coal Township, Pennsylvania. (Doc. 1). He also claims that the defendants violated state criminal law and state tort law. (Id.). On September 15, 2014, Defendants moved for summary judgment on Plaintiff's claims. (Doc. 77). For the reasons discussed below, we will grant Defendants' motion.

*II.*    *Background*

Between 2006 and 2010, Plaintiff was housed at the State Correctional Institute in Coal Township. (Doc. 1 at 6, 30). For disciplinary reasons, in March of 2010, he was assigned to the Restricted Housing Unit (RHU) for a period of eight months. (Id.). On June 15, 2010, to determine whether he should remain in the RHU, a hearing was held before the Program Review Committee. (Id. at 7). Plaintiff claims that upon his

arrival to the hearing, committee members had already completed and signed his review form. (Id.). During the hearing, Plaintiff claimed that he only received negative reports about his behavior because he filed grievances against staff. (Id.). He also ensured the committee that those grievances would continue. (Id.). According to Plaintiff, committee members answered by saying, "well, I guess you'll be doing all your hole time into November and maxing out." (Id.). Thereafter, the committee denied Plaintiff's release from the RHU. (Doc. 90-8 at 32). In response, Plaintiff filed a grievance. (Id.). He alleged that the committee denied him due process by completing the review form before the hearing took place, and he alleged that the committee retaliated against him for filing grievances. (Id.).

In his 266-paragraph complaint, Plaintiff alleges that in response to his grievance against the Periodic Review Committee, Defendants routinely violated his constitutional rights. (Doc. 1). Liberally construed, Plaintiff's complaint asserts violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. (Doc. 60 at 2; Doc. 65). On October 23, 2012, Defendant Ronald Zanella filed a motion to dismiss any and all claims asserted against him. (Doc. 25). We granted his motion. (Doc. 76). On December 4, 2012, the remaining defendants filed a motion to dismiss some of Plaintiff's claims. (Doc. 31). We granted that motion also. (Doc. 65). In so doing, we dismissed any claims based on supervisory liability or failure to investigate, any access to courts claims, any claims asserted against the defendants in their official capacities, and any claims based on verbal harassment. (Id.).

Now Defendants[1] seek summary judgment on the remainder of Plaintiff's claims. Despite requesting multiple extensions to file a brief in opposition, Plaintiff has filed no opposition to Defendants' motion. Nevertheless, we must address the Defendants' motion on its merits. See Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991)

*III.        Discussion*

*A.  Standard of Review*

We will examine the motion for summary judgment under the well-established standard: summary judgment will only be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). We "must view all evidence and draw all inferences in the light most favorable to the non-moving party" and we will only grant the motion "if no reasonable juror could find for the non-movant." Id. "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party.'" Roth v. Norfalco, 651 F.3d 367, 373 (3d Cir. 2011) (citing Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011)). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

---

1. The instant motion includes forty-nine of the remaining fifty-three defendants. Defendants Kauffman, Knarr, Jane Doe Nurses, and John Doe Doctor were excluded. (Doc. 77).

3

and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). With this standard of review in mind, we turn to the merits of Defendants' motion.

*B. Exhaustion of Administrative Remedies*

Defendants argue that they are entitled to summary judgment on the vast majority of Plaintiff's claims because he failed to exhaust his administrative remedies. (Doc. 87 at 16-21).

Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see also Porter v. Nussle, 534 U.S. 516 (2002) (holding that § 1997e also applies to excessive force claims). The Pennsylvania Department of Corrections' administrative remedies include the grievance process outline in policy number DC-ADM 804. Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004). It requires an inmate to satisfy a three step process. First, the prisoner must file an "initial grievance" within fifteen days of the event upon which the grievance is based. (Doc. 90-3 at 31). If dissatisfied with the resolution of the initial grievance, the inmate may appeal to the facility manager within ten days of the initial grievance decision. (Id. at 33). Finally, if dissatisfied with the disposition of the appeal to the facility manager, the inmate may appeal to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). (Id. at 35). To exhaust this grievance process, and

4

satisfy the requirements of § 1997e(a), the inmate must properly exhaust each step – that is, the inmate must proceed through each step of the grievance process and comply with the prison's filing deadlines and procedural requirements for doing so. Woodford v. Ngo, 548 U.S. 81 (2006).

According to Defendants, Plaintiff has properly exhausted the grievance process on only three claims: (1) Defendants denied him shower and exercise time on June 16, 2010 (Grievance No. 324286); (2) Defendants denied him shower and exercise time on July 9, 2010 (Grievance No. 327262); and (3) the Program Review Committee denied him procedural due process and retaliated against him (Grievance No. 323423). (Doc. 87 at 13). On all other claims, Defendants assert that Plaintiff failed to exhaust. As an affirmative defense, Defendants bear the burden of pleading and proving that Plaintiff has not properly exhausted all administrative remedies. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

We find that Defendants have failed to satisfy that burden on ten additional claims. First, Plaintiff alleges that he suffered injuries following a fall on November 7, 2010 and that Defendants failed to provide him with proper medical care. (Doc. 1 at 25). On November 8, 2010, Plaintiff filed an initial grievance complaining about this incident. (Doc. 90-5 at 24). Following the dismissal of that grievance, he filed appeals to the facility manager and SOIGA, both of whom dismissed the grievance on its merits. (Doc. 88 at 26) ("this grievance was denied at all levels of review because the investigation revealed that medical care was provided that was reasonable and appropriate"); (Doc.

90-5 at 17-25). Because Plaintiff satisfied each step of the grievance process outlined in DC-ADM 804, we find that Plaintiff has exhausted his administrative remedies on this claim.

Next, Plaintiff's complaint sets out the following nine claims: (1) on July 24, 2010, Defendants put maggots in his food; (2) on July 30, 2010, Defendants used excessive force; (3) on September 16, 2010, Defendants placed Plaintiff on food loaf restriction; (4) on September 23, 2010, Defendants used excessive force by placing Plaintiff in a "RIPP belt;" (5) on September 23, 2010, Defendants turned off Plaintiff's water; (6) on October 11, 2010, Defendants placed Plaintiff on food loaf restriction and refused to provide him with toilet paper; (7) between October 11 and October 17, 2010, Defendants denied him access to his mail; (8) on October 17, 2010, Defendants confiscated his magazines; and (9) on November 12, 2010, Defendants called him a snitch. Plaintiff filed an initial grievance on each of these incidents and subsequently appealed all of them to both the facility manager and SOIGA. (Doc. 88).

SOIGA dismissed these grievances on the grounds that Plaintiff did not provide all the required documentation. The grievance policy requires that when an inmate makes a final appeal to SOIGA, the inmate must provide photocopies of the initial grievance and first appeal. (Doc. 90-3 at 36). SOIGA found that Plaintiff failed to provide these documents because the photocopies he provided were illegible. Therefore, Defendants argue that by failing to comply with the procedural requirements outlined in the grievance policy, Plaintiff failed to properly exhaust these claims.

6

"[U]nder Section 1997e(a)[,] the prisoner need only exhaust such administrative remedies 'as are available.'" Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000). "Available means capable of use; at hand." Brown v. Croak, 312 F.3d 109, 112-13 (3d Cir. 2002) (internal quotation marks omitted). The Third Circuit has recognized that an administrative remedy is unavailable (not capable of use) if prison officials directly caused the inmate's procedural default. See Camp, 219 F.3d at 280-81.

Here, in an attempt to comply with the procedural requirements for filing an appeal to SOIGA, Plaintiff requested and paid for prison officials to produce photocopies of the required documents. See, e.g., (Doc. 90-4 at 18; 90-5 at 26) (indicating copies produced in prison library). The copies produced were too faint to read, and SOIGA denied Plaintiff's appeals solely on the grounds that the documents were illegible.[2] After some of Plaintiff's appeals were denied for this reasons, he reproduced the required documents by hand. Those appeals too were denied – by policy, photocopies are required. (Doc. 90-3 at 36) ("A proper appeal to final review shall include photocopies . . . .").

By producing illegible photocopies – the only reproduction method permitted by policy – prison officials directly caused Plaintiff's procedural default. Accordingly, we find that the SOIGA appeal was not capable of use and was therefore not available to Plaintiff. Because he filed an initial grievance and appealed to the facility

---

2. Plaintiff's appeals were dismissed outright with no opportunity to cure the defect. Cf. Stevenson v. Quateman, 78 F. App'x 941 (5th Cir. 2003) (finding that inmate failed to exhaust because he failed to resubmit documents after given an opportunity to cure defect).

7

manager, exhausting the two remedies that were available, we find that Plaintiff has exhausted his administrative remedies on these nine claims.

With respect to all other claims in Plaintiff's complaint, we agree with Defendants that Plaintiff has not properly exhausted his administrative remedies. See (Doc. 90-3 - Doc. 90-8) (indicating that on all other claims Plaintiff failed to file grievances, the grievances were untimely, or they failed to comply with procedural requirements). Accordingly, we will grant Defendants summary judgment on all of Plaintiff's remaining claims and dismiss those claims without prejudice. Nifas v. Beard, 374 F. App'x 241, 245 (3d Cir. 2010) (dismissing without prejudice unexhausted claims).

*C. Due Process Claim*

Turning to Plaintiff's exhausted claims, we start with his procedural due process claim. He alleges that since his review form was completed and signed before the periodic review hearing took place, the Program Review Committee denied him procedural due process. (Doc. 1 at 7). Defendants first argue that they are entitled to summary judgment on this claim because the statute of limitations has expired. (Doc. 87 at 6; Doc. 66 at 31).

In Pennsylvania, § 1983 claims are subject to a two-year statute of limitations. Owens v. Okure, 488 U.S. 235, 249 (1989) (stating that § 1983 claims are subject to state statute of limitations governing personal injury actions); 42 PA. CONS. STAT. ANN. 5524(7) (stating there is a two-year limitation for bringing personal injury actions in Pennsylvania). However, the two-year statute of limitations is tolled while an

inmate exhausts his administrative remedies. Pearson v. Sec'y Dep't of Corr., 775 F.3d 598 (3d Cir. 2015). Here, the periodic review hearing took place on June 15, 2010. (Doc. 90-8 at 32). One week later on June 22, 2010, Plaintiff filed his initial grievance, tolling the statute of limitations. (Doc. 90-8 at 46). Plaintiff's administrative remedies were exhausted on January 21, 2011, when SOIGA denied his final appeal. (Doc. 90-8 at 32). Thus, Plaintiff had until January 14, 2013 to file his due process claim – two years minus one week from the date of exhaustion. Pursuant to the prisoner mailbox rule, Plaintiff filed his complaint on July 31, 2012. (Doc. 1 at 33). Therefore, his due process claim was timely.

Next, Defendants argue that they are entitled to summary judgment because Plaintiff's claim fails on its merits. (Doc. 87 at 7). The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. CONST. amend. XIV. Thus, to establish a violation of procedural due process, Plaintiff must first show that he had a life, liberty or property interest protected by the Constitution. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). According to Defendants, Plaintiff had none.

The Third Circuit has recognized that "inmates are generally not entitled to procedural due process in prison discipline hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." Burns v. Pa. Dep't of Corr., 642 F.3d 163, 171 (3d Cir. 2011). Only when the sanction imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" is

9

a protected liberty interest implicated. Sandin v. Conner, 515 U.S. 472, 483-84 (1995).

We find that Plaintiff's retention in the RHU does not reach this threshold. First, the length of Plaintiff's confinement to the RHU – eight months – was not an atypical or significant hardship. Indeed, the Third Circuit has indicated that disciplinary confinement as long as fifteen months is not an atypical or significant hardship. Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (stating fifteen months not atypical); see also Diaz v. Canino, 502 F. App'x 214, 218 (3d Cir. 2012) (stating twelve months not atypical). Further, Plaintiff has produced no evidence that the conditions of his confinement in the RHU were in any way different from what he would have experience outside of RHU custody. Diaz, 502 F. App'x at 218. Because the length and conditions of Plaintiff's assignment to the RHU do not impose an atypical or significant hardship, we find that Plaintiff did not have a constitutionally protected liberty interest. Accordingly, we will grant Defendants summary judgment on this claim.

*D. Eighth Amendment Claims*

The majority to Plaintiff's exhausted claims allege that Defendants imposed cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. We separate those claims into two categories – conditions of confinement and excessive force – and address each in turn.

1. *Conditions of Confinement Claims*

The Eighth Amendment's prohibition of cruel and unusual punishments imposes a duty on prison officials to provide humane conditions of confinement. Farmer

10

v. Brennan, 511 U.S. 825, 832 (1994).  To establish that his conditions of confinement violate this requirement, an inmate must satisfy two elements.  The first element is objective; it requires the inmate to show that the deprivation he suffered was sufficiently serious to implicate the Eighth Amendment.  Id.  The second element is subjective; it requires the inmate to show that the defendant acted with a sufficiently culpable state of mind.  Id. at 834.  Defendants argue that they are entitled to summary judgment because Plaintiff's conditions-of-confinement claims fail to state violations of the Eighth Amendment.  (Doc. 87 at 29 n.5-6, 31-33).

We start with Plaintiff's claims that: (1) he was denied showers and exercise time; (2) maggots were placed in his food; (3) he was fed food loaf; (4) he was denied water access; (5) he was denied toilet paper; (6) he was denied his mail; and (7) his magazines were confiscated.  (Doc. 1 at 8-10, 15, 18-21).  The courts of appeals and our sister courts have routinely held that these conditions, when limited in duration, are not sufficiently serious to satisfy the first element of an Eighth Amendment claim.  See e.g., Adderly v. Ferrier, 419 F. App'x 135, 139-40 (3d Cir. 2011) (holding denial of toiletries, mail, and shower for seven days failed to satisfy first element); Williams v. Delo, 49 F.3d 442, 444-47 (8th Cir. 1995) (holding no violation when water in cell was turned off); Miller v. Trometter, No. 4:11-CV-811, 2012 WL 5933015 at *11 (M.D. Pa. Nov. 27, 2012) (holding that denial of exercise thirty-four times in a two month period failed to establish first element); Jones v. Beard, No. 10-5544, 2011 WL 3611470 at *8 (E.D. Pa. August 16, 2011) (holding that temporary food loaf diet does not satisfy first element); Murray v.

11

Allen, No. 10-1014, 2010 WL 4159261 at *2 (E.D. Pa. Oct. 21, 2010) (holding that isolated incidents of maggots in food is not sufficiently serious). Accordingly, we will grant Defendants summary judgment on these claims.

Next, Plaintiff alleges that Defendants were deliberately indifferent to his medical needs after he suffered injuries from a fall. (Doc. 1 at 25). To satisfy the objective element in the context of a medical indifference claim, Plaintiff must show that he had a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). Additionally, 'if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987).

Here, Plaintiff fails to establish that he suffered from a serious medical need. His complaint merely states that he received injuries to his head, neck, and ankle. He does not plead, much less produce any evidence, that the injuries were diagnosed by a physician as requiring treatment, were obviously recognized as needing a doctor's attention, or that delay in treatment inflicted unnecessary pain. Accordingly, we will grant Defendants summary judgment on this claim.

Last, Plaintiff alleges that Defendants called him a "snitch." Although we previously dismissed all claims based on verbal harassment (Doc. 65), being labeled as a snitch is cognizable as a conditions-of-confinement claim. See, e.g., Tabb v. Hannah, No. 1:CV-10-1122, 2014 WL 820092 (M.D. Pa. March 3, 2014) (Caldwell, J.). Subsumed in their duty to provide humane prison conditions, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Id. at *3. If an inmate is labeled as a snitch and prison officials fail to protect the inmate from harm imposed by other prisoners, the inmate has a viable claim. To satisfy the objective element on such a claim, the inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm. Wallace v. Doe, 512 F. App'x 141, 144 (3d Cir. 2013). Plaintiff fails to do so. As with his medical claim, Plaintiff neither pleads nor produces any evidence to establish that by being labeled a snitch, he was exposed to a substantial risk of serious harm. See (Doc. 1 at 26). Because Plaintiff cannot satisfy the objective element of this claim, we will grant Defendants summary judgment. Accord Tabb, 2014 WL 820092 at *3-4.

### 2. Excessive Force Claims

Plaintiff has two exhausted excessive force claims. First, he alleges that Defendants used excessive force during a cell search on July 30, 2010. (Id.). He claims that during the search Defendants moved him away from his cell, slammed him against a wall, and pulled on his handcuff leash – which made it difficult for him to breath. (Doc. 1 at 11). From this incident, Plaintiff claims that he suffered cuts, bruises, and a small

13

concussion. (Id.). In his second excessive force claim, Plaintiff avers that he was subject to excessive force when he was placed in a "RIPP belt" – a belt with handcuffs on each side. According to Plaintiff, the handcuffs were too tight, causing his hands to turn blue and go numb. Defendants assert that they are entitled to summary judgment on these claims because no reasonable juror could conclude that excessive force was applied.

The core inquiry in an excessive force claim is whether the "force was applied in a good faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Factors relevant to such a determination include: (1) the need for the application of force; (2) the relationship between the need and amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates; and (5) any efforts made to temper the severity of a forceful response. Whitley v. Albers, 475 U.S. 312, 321 (1986).

Applying these factors to the undisputed facts of this case, we find that no reasonable trier of fact could conclude that Defendants applied the force maliciously or sadistically to cause harm.³ First, in each instance there was a need for the application of

---

3. "The Eighth Amendment's prohibition of "cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to mankind." Hudson, 503 U.S. at 9 (internal quotation marks omitted). "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). We doubt Plaintiff's claims surpass this objective threshold. At most, Plaintiff is complaining about being pushed into a wall and restrained in handcuffs, and he produces no evidence of discernible injury. See, e.g., Acosta v. McGrady, No. 96-2874, 1999 WL 158471 at *9 (E.D. Pa. March 22, 1999) (holding that sharply pulling inmate's hands behind his back, which were handcuffed, and slamming him into a wall was *de minimis*); Gutridge v. Chesney, No. 97-3441, 1998 WL 248913 at *3 (E.D. Pa. May 8, 1998) (holding that being handcuffed and pushed

14

force. During the cell search, Plaintiff was being loud and disruptive toward prison officials while they were conducting the search. (90-1 at 78). Additionally, when Plaintiff was placed in the RIPP belt, he had continually violated prison rules by covering the window to his cell. (Doc. 88 at 14). Second, the relationship between the need and amount of force was reasonable. Pushing Plaintiff against a wall and pulling on his handcuffs limited Plaintiff's movements while he was being disruptive. Likewise, using the RIPP belt secured Plaintiff's hands to his waist so that he was unable raise his hands high enough to cover his window. Third, Plaintiff's injuries, if anything, were minor. He alleges that he suffered cuts, bruising, discoloration, numbness, and a "small" concussion – which was apparently self-diagnosed.[4] (Doc. 1 at 11; 18). The negligible nature of Plaintiff's injuries is underscored by the fact that (1) he never complained of injuries or sought medical treatment after his cell search (Doc. 90-1 at 77-79), and (2) while he was restrained in the RIPP belt, medical staff checked the tightness of the handcuffs and determined that each wrist had capillary relief. (Doc. 90-4 at 4). Fourth, there was a risk of danger in each instance. By becoming argumentative and disorderly, Plaintiff posed a physical threat to the prison officials conducting the search of his cell and it created a risk that other inmates in the restricted housing unit would also become agitated. Similarly, Plaintiff posed safety risks to prison officials and inmates by covering his window; the obstructions prevented prison officials from observing the inside of Plaintiff's cell. And

---

against a wall was *de minimis*). Nevertheless, viewing the evidence in the light most favorable to Plaintiff, we will analyze Plaintiff's claim under the core inquiry.

4. Plaintiff produces no medical evidence to support these claims.

finally, Defendants made efforts to temper the severity of force applied. In each case, Defendants gave Plaintiff verbal instructions, which he refused to follow. (Doc. 88 at 14; Doc. 90-1 at 78).

Because the undisputed facts establish that Defendants applied force in a good faith effort to restore discipline, and not maliciously or sadistically to cause harm, Plaintiff is unable to satisfy an essential element of his excessive force claims. Accordingly, we will grant Defendants summary judgment.

### E. First Amendment Claims

In Plaintiff's final exhausted claims, he makes allegations implicating his First Amendment rights. Those claims assert that Defendants (1) retaliated against him for filing grievances and (2) denied him access to his mail. We address each in turn.

#### 1. Retaliation

Plaintiff alleges that the denial of showers and exercise on June 16, 2010, the use of force during the cell search on July 30, 2010, the confiscation of his magazines on October 17, 2010, the restriction of water access on September 23, 2010, the denial of adequate medical care after he suffered a fall, and his retention in the RHU were all done in retaliation for filing grievances.[5] To establish a retaliation claim, a prisoner "must

---

5. In his complaint, Plaintiff intermingles retaliation claims with underlying constitutional violations. However, "[r]etaliation is a separate claim and prisoners must raise a specific claim of retaliation in their prison grievance in order to exhaust administrative remedies." Andrews v. Tennis, No. 1:09-CV-1190, 2012 WL 911565 at * 2 (M.D. Pa. March 16, 2012) (Caldwell, J.). Of Plaintiff's thirteen exhausted claims, these six are the only ones in which he specifically alleged retaliation in his prison grievances. Therefore, to the extent that Plaintiff's complaint attempts to set out additional retaliation claims, those claims are unexhausted, and Defendants are entitled to summary judgment.

16

show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Defendants claim that they are entitled to summary judgment because Plaintiff fails to establish either adverse action or causation on each of his claims.

We agree that Plaintiff has failed to establish that the denial of showers and exercise, the denial of medical care, and the confiscation of magazines constitute adverse actions. First, the lack of shower and exercise time were the result of Plaintiff's own refusals, not actions by Defendants.[6] See (Doc. 90-1 at 5-6). The same is true with his medical treatment. Indeed, Plaintiff's own complaint admits that he was offered medical treatment and he refused it. (Doc. 1; 90-1 at 89). Therefore, these are not adverse actions by prison officials. Last, the magazines Defendants confiscated from Plaintiff's cell belonged to other inmates. The confiscation of another inmate's property is not sufficient to deter an ordinary citizen from exercising his constitutional rights. Burgos v. Canino, 358 F. App'x 302, 307 (3d Cir. 2009) (holding that interference with newspaper subscription insufficient to establish adverse action); Potter v. Fraser, No. 10-4200, 2011 WL 2446642 at *8 (D. N.J. June 13, 2011) (holding that confiscation of commissary

---

6. Even if he were denied showers and exercise by Defendants, such denials would not be sufficiently adverse to deter an ordinary person. See Burgos v. Canino, 358 F. App'x 302, 307 (3d Cir. 2009); Hardwick v. Packer, No. 1:12-CV-1936, 2013 WL 4016495 at *18 (M.D. Pa. Aug. 6, 2013); see also Clemens v. Locket, No. 11-1482, 2013 WL 6230648 at *2 (W.D. Pa. Dec. 2, 2013).

17

purchases not adverse action). Accordingly, we find that no reasonable juror could conclude that Plaintiff was subject to an adverse action.

On the remaining three retaliation claims, we agree that he cannot establish a causal link. To show causation, the plaintiff has the initial burden to establish that constitutionally protected activity was a substantial or motivating factor in the adverse action against him. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Once the prisoner has made his prima facie case, prison officials may still prevail by proving by a preponderance of the evidence "that they would have made the same decision absent the protected conduct for reasons reasonably related to penological interests." Id.; see also Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).

Here, assuming that Plaintiff has made his prima facie showing, Defendants have satisfied their burden. The maintenance of a safe and orderly facility is a legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89 (1987); Mincy v. Klem, 277 F. App'x 239, 243 (3d Cir. 2008). When inmates disobey rules or orders, the imposition of restrictions, including assigning inmates to restricted housing, is essential to that interest. Mincy, 277 F. App'x at 243. Here, Defendants have produced evidence that Plaintiff was denied release from the RHU because he continually disobeyed prison rules. (Doc. 90-8 at 36) (indicating Plaintiff received twelve misconducts). Likewise, they produced evidence that he was extricated from his cell and placed in the psychiatric observation cell – which is where the temporary water restriction was imposed – because he refused to remove a covering from his window. (Doc. 90-4 at 15; Doc. 90-1 at 41). Finally, they

18

produced evidence that Plaintiff' was subject to force and restrained during the search of his cell because he became loud and disruptive.  Therefore, we find that Plaintiff's custody in the RHU, placement on water restriction, and physical restraint during his cell search were reasonably related to maintaining a safe and orderly facility.

Because Plaintiff's retaliation claims fail to satisfy either the adverse action element or the causation element, we will grant Defendants summary judgment on these claims.

### 2. Access to Mail

Finally, Plaintiff claims that his First Amendment rights were violated because Defendants denied him access to incoming mail between October 11, 2010 and October 17, 2010.  "[P]risoner's, by virtue of their incarceration, do not forfeit their First Amendment right to use of the mails." Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006). Thus, interference with inmate non-legal mail may amount to a denial of free speech under the First and Fourteenth Amendments. Freeman v. Northumberland Cnty., 3:10-CV-2502, 2014 WL 4447587 at *8 (M.D. Pa. Sept. 10, 2014).  However, a prisoner's rights "must be exercised with due regard for the inordinately difficult undertaking that is modern prison administration." Thornburgh v. Abbott, 490 U.S. 401, 407 (1989). "Accordingly, the right to receive and send mail can be restricted for legitimate penological interests." Holbrook v. Kingston, 552 F. App'x 125, 129 (3d Cir. 2014).

As discussed above, the maintenance of a safe and orderly facility is a legitimate penological interest.  Here, on the dates in question, Plaintiff was denied mail

19

because he routinely violated prison rules by covering the window in his cell. (Doc. 90-4 at 30-32). Thus, Plaintiff's lack of access to mail – material that he could use to cover his window – served Defendants interest in maintaining an orderly facility. Accordingly, we will grant Defendants summary judgment.

*IV.      Conclusion*

For the reasons discussed above, we will grant Defendants' motion for summary judgment. For the same reasons, we will also *sua sponte* dismiss Plaintiff's claims against the non-moving defendants.[7] The claims addressed above will be dismissed with prejudice, while Plaintiff's unexhausted claims will be dismissed without prejudice. Last, we will deny jurisdiction over Plaintiff's pendent state law claims, see 28 U.S.C. § 1367(c)(3), and dismiss those claims without prejudice. We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

---

7. District courts "possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Here, Plaintiff had notice when Defendants filed their motion for summary judgment and brief in support, and he had an opportunity to respond by filing a brief in opposition.